UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ODELIA ABECASSIS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OSCAR S. WYATT, JR., et al.,<br><br>    Defendants. | Civil Action 09-00001  (HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are victims and family members of persons killed or injured in terrorist suicide attacks in Israel between November 2000 and April 2002.  They bring this action against two Houston residents and five Houston-based oil companies asserting claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note, the Anti-Terrorism Act, 18 U.S.C. § 2333, and the Alien Tort Statute, 28 U.S.C. § 1350.  Alleging that defendants knowingly paid illegal surcharges to the Government of Iraq and knew that the surcharges would be used  to support and promote terrorist attacks, plaintiffs seek to hold defendants liable for the resulting injuries and deaths to plaintiffs and their family members.

Before the Court are the motions of defendants NuCoastal Corporation, Oscar S. Wyatt, Jr., and El Paso Corporation (collectively "defendants") to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the Southern District of Texas, Houston Division. [## 24, 25, 27].  Upon consideration of the motions, the opposition thereto, and the record of this case, the Court concludes that defendants' motions should be granted.

I.

After the Iraqi army invaded Kuwait in August 1990, the United Nations imposed economic sanctions on the Government of Iraq. Under the terms of these sanctions, member states of the United Nations were prohibited from trading Iraqi commodities or products. In 1996, the Security Council of the United Nations and the Government of Iraq agreed to implement Resolution 1986, which permitted the Iraqi Government to sell oil under the condition that the proceeds would be used to purchase various humanitarian goods for the benefit of the Iraqi people. The United Nations Office of Iraq Programme, Oil-for-Food Program ("OFP") was established to administer the sale of oil and purchase of humanitarian goods by Iraq.

Plaintiffs allege that the Iraqi Government entered into contracts for the sale of oil to defendants under the OFP based on defendants' willingness to pay a secret surcharge to the Saddam regime. According to plaintiffs, defendants knew that the Saddam regime used this money to initiate a "financial reward and incitement program which rewarded the families of 'martyrs' and suicide bombers" in an effort to "incentivize" acts of terrorism, Compl. ¶¶ 122, 125, some of which resulted in grave injury and death to plaintiffs and their family members.

Based on these allegations, plaintiffs sued defendants in the District of Columbia. Defendants now seek to transfer this case to the Southern District of Texas, Houston Division under 28 U.S.C. § 1404(a).[1]

---

[1] Because § 1404(a) presumes that the transferor court is a proper venue, *Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543, 546 (D.C. Cir. 1992), for the purposes of this motion only, it is assumed that venue would be proper in the United States District Court for the District of Columbia. Even if venue is not proper here, however, transfer would nevertheless be appropriate under 28 U.S.C. § 1406(a), which, "in the interest of justice," provides for transfer from an inappropriate forum to any district or division in which the case could have been brought. A key consideration in both §1406(a) and §1404(a) is "the interest of justice" and the analysis in this opinion satisfies that standard whether under § 1404(a) or § 1406(a).

## II.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006).  To assess whether transfer is appropriate, the court will "balance a number of case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).  The private interest factors include:  (1) plaintiff's choice of forum, (2) defendant's choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. *Id*. The public interest factors include:  (1) the transferee district's familiarity with the governing law, (2) the relative congestion of both the transferor and transferee courts, and (3) the local interest in deciding local controversies at home. *Id.*  The party seeking a transfer bears the burden of demonstrating that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991) (internal quotation omitted); *see Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955). Defendants have met their burden here.[2]  Indeed, a proper balancing of the private and public interest factors weigh decidedly in favor of transfer.

It is apparent that the only factor weighing against transfer is plaintiffs' choice of forum, a choice to which, ordinarily, substantial deference is due.  However, "courts afford 'substantially

---

Accordingly, this Court need not decide whether venue is proper in this district.

   [2]   As an initial matter, the Court finds that this case "might have been brought" in the Southern District of Texas, Houston Division, *see* 28 U.S.C. § 1404(a), because, among other reasons, a substantial part of the events or omissions giving rise to the claim occurred there.  *See id*. § 1391(b).

less deference' to that choice where the plaintiff is not a resident of that forum or where the claims lack substantial connections to that forum." *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68 (D.D.C. 2005) (citation omitted). Such is the case here. None of the plaintiffs reside here and their claims have little connection with the District of Columbia. The major activities associated with the surcharge scheme that underlies plaintiffs' claims, including the execution of oil contracts, occurred in Houston. Plaintiffs' argument that it was in connection with defendants' contacts within the District of Columbia that defendants were able to conspire to "create the exact program[, the OFP,] they manipulated in order to maintain lucrative contracts with the Iraqi government," Pl.'s Opp'n to Def.'s Oscar S. Wyatt, Jr. & NuCoastal Corp. Mot. to Transfer Venue at 1, is not persuasive. This alleged activity is not a substantial part of the claims described in plaintiffs' complaint.

Finally, in determining where venue will lie in a tort action, courts generally "look to 'where the allegedly tortious actions occurred and . . . where the harms were felt.'" *Elemary v. Phillip Hlzman A.G.*, 533 F. Supp. 2d 144, 151 (D.D.C. 2008) (citations omitted). Here, again, a substantial part of the activities of the surcharge scheme occurred outside of the District of Columbia and the harms for which plaintiffs seek to hold defendants liable, the murder and maiming of plaintiffs, occurred elsewhere as well, in Israel.

### III.

For the foregoing reasons, it is this 19th day of November 2009, hereby

**ORDERED** that "Defendant NuCoastal Corporation's Motion to Transfer" [#24] is **GRANTED**; and it is further

**ORDERED** that "Defendant Oscar S. Wyatt, Jr.'s Motion to Transfer" [#25] is **GRANTED**; and it is further

4

**ORDERED** that "Defendant El Paso Corporation's Motion to Transfer Venue" [#27] is **GRANTED**; and it is further

**ORDERED** that this case shall be transferred to the Southern District of Texas, Houston Division.

Henry H. Kennedy, Jr.
United States District Judge